IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **RAHEEM H. ALI,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| v. | ] |
| | ]   4:11-CV-2743-KOB |
| **EDUCATION CORPORATION OF** | ] |
| **AMERICA** | ] |
| **d/b/a Virginia College On-Line,** | ] |
| | ] |
| **Defendant.** | ] |

## MEMORANDUM OPINION

This matter comes before the court on the Motion for Summary Judgment (doc. 26) filed by Defendant Education Corp. of America ("The College"). Mr. Ali claims that the College discriminated against because he is an African American and retaliated against him because he opposed unlawful and discriminatory employment practices. The College argues that Mr. Ali's claims of racial discrimination and retaliation fail as a matter of law because he cannot establish a prima facie case of either retaliation or discrimination. The court finds that no genuine issues of material fact exist in this case and the parties only dispute interpretations and characterizations of the record. Mr. Ali cannot establish an adverse employment action sufficient under the law to establish a prima facie case of discrimination, and he cannot establish that he had a reasonable belief that the College was engaged in an unlawful employment practice to establish a statutorily protected activity for his claim of retaliation. Because of these reasons, the court will GRANT the College's motion for summary judgment, DISMISS Mr. Ali's claims with prejudice, and will simultaneously enter an order to that effect.

<400>

I.      STATEMENT OF FACTS

    A.      Factual History

Mr. Ali is African American and does not practice or associate himself with any religion. The College employed Mr. Ali as a full-time admissions associate from June 2009 through April 2010. As an admissions associate, Mr. Ali was responsible for contacting prospective students and providing information to them about degrees and course offerings to assess whether the College's programs were the right fit for them. Mr. Ali was paid a $30,000 per year salary and took law school and masters degree courses for two to four hours each night after work while he was employed by the College.

Mr. Ali enjoyed working as an admission associate and was not interested in other open, posted positions at the College. While Mr. Ali was working at the College, however, he did forward his resume and "maybe a cover letter" to an employee of the College who coordinated the adjunct professor positions, and he informally spoke to some managers at the College about working as an adjunct professor some time after finishing his maters and/or law degree. (Doc. 28-1, at 81-82).

The College provides admissions associates with objective goals for job performance within a certain period of time. The College evaluated the admissions associates based on various performance metrics, including student retention percentages. The College expected Admissions Associates to meet certain goals in the form of percentages of students who actually enrolled in the College after the admissions associate spoke to them on an in-bound call. Mr. Ali understood that he would be subject to discipline, including termination, if he did not meet these objective performance goals.

On or about November 20, 2009, Kim King, Mr. Ali's African American supervisor, issued a written reprimand to Mr. Ali for failure to achieve his goals for November. On or about November 30, 2009, Mr. King also rated Mr. Ali's performance as "substandard" on his performance review.

On January 27, 2010, during a routine weekly meeting to discuss Mr. Ali's thirteen week report card, Scotty Smith, Manager of Admissions and Mr. Ali's supervisor, and Daryl Coleman, an African American Manager of Admissions, told Mr. Ali that his lead-to-application conversion rate was overall substandard. The Managers also told Mr. Ali that he had failed to produce any referrals for the entire week and that he had not reached his application goal for the week. Mr. Smith told Mr. Ali that he had a pattern of low sit-rates for the previous three class starts and that these low sit-rates generally indicated a failure either to set proper expectations for prospective students or to properly follow up with prospective students.

The following day, Mr. Smith issued a last chance notice to Mr. Ali because Mr. Ali had missed three of his four budgeted goals since he had been working as an admissions associate and had never achieved his budgeted sit-rate. In this last chance notice, the College warned Mr. Ali that if he failed to demonstrate "immediate and continued improvement in his performance," it could result in disciplinary action, including termination of his employment. (Doc. 28-2, at 35).

On the same day he received his last chance notice, Mr. Ali submitted a letter to William J. Scott in the College's Human Resources Department and Kenneth Macon, Associate Director of Admissions, complaining of an alleged hostile work environment based on the January 27, 2010 meeting with Mr. Smith. In the letter, Mr. Ali stated that Mr. Smith said in the meeting, "I don't know why everybody likes Raheem- Maybe it's the spiritual thing you got goin' on," and

3

that Mr. Smith repeatedly told Mr. Ali to, "Be a man!" (Doc. 33-1).  Mr. Ali alleges that he felt Mr. Smith's comments were based on religious, as well as racial and sexual grounds. The College "looked into" Mr. Ali's complaint and decided to move him to another team with a new supervisor, Larry Sailes, in an effort to prevent any further issues between Mr. Ali and Mr. Smith. (Doc. 28-4, at 28).

On April 17, 2010, Mr. Ali met with his new supervisor, Mr. Sailes, who was African American, for a thirteen week review. Mr. Sailes informed Mr. Ali that he had not met the prescribed application goal or referral goal for the past thirteen weeks.  Mr. Ali alleges that Mr. Sailes was incorrectly reviewing Mr. Ali's performance under "Level III" when he should have been reviewing him under "Level New." (Doc. 28-4, at 65).  Mr. Macon, Associate Director of Admissions, however, testified that the Level III designation "has to be a typo-typographical [sic] mistake. And I say that and can substantiate that because of his goals. The goals that are listed on this report card . . . are, in fact, the goals for a level new." (Doc. 28-4, at 39).

Mr. Macon, who is also African American, reviewed Mr. Ali's history of poor job performance, his November 20, 2009 written reprimand, his November 30, 2009 substandard performance review,  his last chance notice, and his April 17, 2010 thirteen week report card and decided to terminate Mr. Ali's employment with the College. Mr. Ali disputes that Mr. Macon made the decision to terminate him and alleges that Mr. Macon's testimony reveals that Christina Eschelman, the Caucasian Director of Admissions, made the decision.

Mr. Macon's testimony, however, does not address who made the decision to terminate Mr. Ali. (Doc. 28-4, at 31-33). His testimony concerns who made the decision to move Mr. Ali to Mr. Sailes team, and the testimony makes clear that while Ms. Eschelman "is the director, so

every decision has to be made by her," Mr. Macon actually made the decision to "move [Mr.Ali] to [Mr.Sailes'] team." *Id.* at 33.

On April 19, 2010, Mr. Macon met with Mr. Ali to inform him that due to his continued poor job performance, the College was giving him the option of resigning or being terminated. If Mr. Ali chose to resign, he would receive two weeks severance pay and would be eligible for future employment at the College. Mr. Macon testified that Mr. Ali "actually physically handed" Mr. Macon his letter of resignation on April 21, 2010.  *Id.* at 56.

On July 8, 2010, Mr. Ali filed a sworn Equal Employment Opportunity Commission charge claiming that he had been discriminated against "because of my religion (perceived) Muslim, my race, Black, and my sex, male." (Doc. 28-2, at 42).  Mr. Ali confirmed that he believed he was terminated "due to forms of discrimination, racial discrimination, and possibly others" when he was questioned by his own counsel. However, when questioned by the College's counsel, Mr. Ali testified that he believed he was terminated because "Virginia College is just ruthless" and because he was "[j]ust not liked very much." (Doc. 28-1, at 199).

While he was still employed by the College, Mr. Ali sued Riverside Parc Apartments for personal injuries sustained in a slip and fall accident. In that lawsuit, Mr. Ali testified that he missed five days of work at the College to see a dentist and left work for an hour to ninety minutes seventeen times to see a chiropractor. (Doc. 28-2, at 45-46). Mr. Ali claimed that the injuries from the lawsuit "led to [him] eventually being discharge[d] from [his] job."  (Doc. 28-2,at 46).  In the present case, Mr. Ali also testified that it had "entered his mind" that his time off from work due to the injuries he suffered as a result of the slip and fall accident may have contributed to his termination. (Doc. 28-1, at 200).

B.     Administrative and Procedural History

As discussed above, Mr. Ali filed a discrimination charge with the EEOC on July 8, 2010. The EEOC was "unable to conclude that the information obtained establishe[d] violations of the statutes," and Mr. Ali received a Notice of Right to Sue on May 4, 2011. ("Dismissal and Notice of Rights" Doc. 1, at 16).

On August 1, 2011, Mr. Ali filed a Complaint in this court alleging five counts: (1) racial discrimination; (2) religious discrimination; (3) age discrimination; (4) violation of 42 U.S.C. § 1981; and (5) retaliation. (Doc. 1). The College filed a Motion to Dismiss counts two, three, and five, and the court held a hearing on the motion on December 21, 2011. (Doc. 5). The court dismissed count two because Mr. Ali was not a member of a protected class for purposes of religious discrimination, and the court dismissed count three because Mr. Ali failed to file an age discrimination claim with the EEOC. (Doc. 15). The court denied the College's Motion to Dismiss count five because Mr. Ali had sufficiently pled a claim of retaliation at the motion to dismiss stage, but the court specifically emphasized that "whether the plaintiff can show on summary judgment that he objectively believed that the defendant's conduct was unlawful is not a foregone conclusion." *Id.* at 2.

On July 24, 2012, Mr. Ali filed a First Amended Complaint alleging three counts: (1) racial discrimination; (2) violation of 42 U.S.C. § 1981; and (3) retaliation. The College filed its Motion for Complete Summary Judgment on August, 10, 2012, and the parties have fully briefed the motion.

II.     STANDARD OF REVIEW

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–23. Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)  In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some

metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added). .

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party.  *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988).  The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury.  *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).

Furthermore, all evidence and reasonable inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party.  *Graham*, 193 F.3d at 1282. The nonmoving party "need not be given the benefit of every inference but only of every reasonable inference."  *Id.*  The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor."  *Anderson*, 477 U.S. at 255.  After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

III.   LEGAL ANALYSIS

    A.   Racial Discrimination

Mr. Ali alleges that the College engaged in unlawful race discrimination under Title VII of the Civil Rights Act of 1984 in count I of his first amended complaint and alleges that the College engaged in unlawful racial discrimination under 42 U.S.C. § 1981 in count II. Because both counts allege unlawful racial discrimination and rely on the same prima facie case to show discrimination, the court will consider them together. *See Bryant v. Jones,* 575 F.3d 1281, 1286 n. 20 (11th Cir. 2009) ("[D]iscrimination claims . . . brought under the Equal Protection Clause, 42 U.S.C. § 1981, or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, are subject to the same standards of proof and employ the same analytical framework.").

To prove a prima facie case of discrimination, Mr. Ali must show: " (1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).  Mr. Ali is African American and thus indisputably a member of a protected class. The College does not dispute that Mr. Ali was qualified to serve as an admissions associate. However, the College asserts that Mr. Ali cannot make out a prima facie case of discrimination because he did not suffer an adverse employment action and was not treated any differently than similarly situated employees outside of his protected class.

    1.   Mr. Ali suffered adverse employment action

Mr. Ali asserts that he suffered adverse employment action because the College hindered his chance to be promoted and subjected him to harsher performance reviews.

9

a. Promotions and Transfers

Failure to promote can be an adverse employment action giving rise to liability for discrimination, but "when an employer has publicized an open position and requires a formal application, a general interest in the position is insufficient to satisfy the application requirement." *Williams v. Waste Management*, 411 F. App'x 226, 228 (11th Cir. 2011) (citing *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1345-46 (11th Cir. 2003)). However, if an employer uses informal hiring procedures, then "a plaintiff need only demonstrate that the employer had some reason to know of his interest in the position." *Id.* (citing *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005)).

In this case, Mr. Ali never formally applied for any open positions at the College. Although he did express interest in a position as an adjunct professor in the future once he had finished his Master's and/or Law Degree, that possibility still lay in the distant future. So even assuming the College knew about Mr. Ali's interest in the position of adjunct professor, its failure to promote him for a position he was not yet qualified for and had not formally applied for is not sufficient to constitute an adverse employment action.

Similarly, Mr. Ali's transfer to Mr. Sailes' team does not qualify as an adverse employment action because "to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001). Mr. Ali's transfer to Mr. Sailes' team did not affect his salary, responsibilities, or performance standards. Mr. Ali's "lateral transfer with full retention of benefits [cannot] be described as an adverse employment action." *Njie v. Regions Bank*, 198 F. App'x 878, 883 (11th

Cir. 2006) (citing *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1452-53 (11th Cir. 1998)).

b.   Performance Reviews

Mr. Ali claims that he suffered adverse employment action because he "was subjected to harsher performance reviews than his white co-workers [and] . . . was held to a higher performance standard." (Doc. 33, at 11). This claim is based on the April 17, 2010 thirteen week report card that indicates Mr. Ali was being reviewed as a Level 3 employee when he was in fact a Level New employee. ("13-Week Admissions Report Card," Doc. 28-4, at 49). Mr. Macon testified that the goals on the report card are the appropriate goals for a Level New employee and that "Level 3" listed at the top of the evaluation was a typographical mistake.

Another thirteen week report card from March 31, 2010 lists Mr. Ali as a Level 0.8[1] employee and contains a note, presumably from Mr. Ali's then-supervisor, saying that "As a level new rep, it's best that he achieve 20 leads per week." ("13-Week Admissions Report Card," Doc. 28-4, at 48). The goals listed on this report card are the same as those listed on the April 17th report card, proving that Mr. Ali was subject to the performance standards of a Level New employee despite the typographical error on the April 17th report card.[2] The College also provided a piece of evidence listing the "Minimum Average Standards" for all of the different Level employees; the Level New average weekly referral goal is 2.5, the same goal listed on both of Mr. Ali's thirteen week report cards. Additionally, the April 17th report card has a note typed

---

[1]   The court interprets "0.8" as falling under the Level New category because it is not yet Level 1, which is the category above Level New for performance review purposes.

[2]   Both thirteen week admission report cards list 1.9 as the average applications goal; 1.4 as the average enrollment goal; and 2.5 as the average referral goal. ("13-Week Admissions Report Card," Doc. 28-4, at 48-49).

on it: "Your lead/ appl[ication] goal for Level New is 13.2% law ECA Comp Plan." The court finds this evidence refutes any of Mr. Ali's contentions that he was subjected to heightened Level 3 standards in his April 17th performance review. The reasonable interpretation of the cumulative evidence is that "Level 3" was an error on the College's part in transcribing and not in reviewing Mr. Ali's performance.

Because Mr. Ali cannot establish any adverse employment action that the College took against him, he cannot establish a prima facie case of discrimination under Title VII or 42 U.S.C. § 1981. Because no genuine issues of material fact exist regarding Mr. Ali's claims of discrimination and because he cannot establish a prima facie case of discrimination, the court will GRANT the College's motion for summary judgment as to Counts I and II of Mr. Ali's Amended Complaint.

   B.   Retaliation

Mr. Ali alleges that the College terminated him in retaliation for him opposing an unlawful employment practice when he reported Mr. Smith's comments to Mr. Macon and Mr. Scott. An employee may not be retaliated against for having "opposed any practice made an unlawful employment practice, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).   To establish a prima facie case of retaliation, a plaintiff must show: "(1) that [ ]he engaged in statutorily protected conduct; (2) that [ ]he suffered adverse employment action; and (3) that there is 'some causal connection' between the two events." *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1268 (11th Cir. 2010) (citing *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008)).

1.  Statutorily Protected Conduct

Mr. Ali claims that he engaged in statutorily protected conduct when he complained about the comments Mr. Smith allegedly made to him about his "sex and religion" in a letter to Mr. Scott and Mr. Macon on January 28, 2010. (Doc. 30, at 17). To engage in statutorily protected conduct by reporting an unlawful employment practice, Mr. Ali must show that he "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Weeks v. Harden Mfg. Corp.,* 291 F.3d 1307, 1311 (11th Cir. 2002) (citing *Little v. United Tech., Carrier Transicold Div.,* 103 F.3d 956, 960 (11th Cir. 1997)).

Mr. Ali must show that he "'subjectively (that is, in good faith)'" believed that the College engaged in unlawful employment practices *and* that his belief was "'objectively reasonable in light of the facts and record presented.'" *See Weeks*, 291 F.3d at 1312 (quoting *Little*, 103 F.3d, at 960). Mr. Ali "need not prove that the conduct he opposed was actually unlawful, but the reasonableness of his belief that [the College] 'engaged in an unlawful employment practice must be measured against existing substantive law.'" *See Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010) (quoting *Clover v. Total Sys. Serv., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999)).

Mr. Ali claims that Mr. Smith's comments offended him, and that he was "heightened to the likelihood that these types of comments were not appropriate in an employment setting." (Doc. 30, at 18). In denying the College's Motion to Dismiss Mr. Ali's retaliation claim, the court recognized that "a plaintiff conceivably could prevail on his retaliation claim notwithstanding the fact that the practice he opposed was not unlawful under Title VII." (Doc. 15, at 2 (quoting *Little*, 103 F.3d, at 960)). Mr. Ali has produced sufficient evidence to show his

13

subjective belief that Mr. Smith's comments were an unlawful employment practice. In light of the facts of this case, however, the court finds Mr. Ali's assertion that he reasonably believed Mr. Smith's comments to be a violation of Title VII to be implausible.  Mr. Ali even admits that "he didn't know if Mr. Smith was attacking his sexuality, race, or religion."  Mere offense does not rise to the level of reasonable belief that the College was engaging in an unlawful employment practice. *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) ("Title VII, we have said, does not set forth a general civility code for the American workplace.") (internal citations omitted).

A. Religious Discrimination

Mr. Ali claims that Mr. Smith's comment about his "spiritual thing" deeply offended him and was a form of religious discrimination. The court interprets Mr. Smith's comment about Mr. Ali's "spiritual thing" as a compliment to his interpersonal skills and said in the context of helping Mr. Ali improve his work ethic and production. The only case that Mr. Ali cites for the proposition that a complaint for an allegedly discriminatory comment is a protected action for purposes of establishing a prima facie showing of retaliation is distinguishable from this case. *See Greene v. Swain County Partnership for Health*, 342 F. Supp. 2d. 442 (W.D. N.C. 2004). In *Greene*, the plaintiff opposed her supervisor's "discriminatory slurs" and a specific statement that Cherokee Indians did not view teen pregnancy as a problem because the grandmothers often cared for the children of teen pregnancies. *Id.* at 446.  Mr. Smith's comments are far from what can reasonably be considered a "discriminatory slur" or even negative commentary on anything but Mr. Ali's work production and failure to meet the prescribed goals.

The evidence in *Greene* also clearly established that the plaintiff's supervisors believed

14

she was Native American because she informed them herself she was Native American. *Id*. at 451. Here, Mr. Ali has not produced any evidence showing that the College reasonably perceived Mr. Ali to be of any particular religion or sexual orientation, and Mr. Ali admits that he does not associate himself with any particular religion. Thus, Mr. Ali cannot have held a reasonably objective belief that Mr. Smith's comments about his "spiritual thing" were religiously discriminatory and thus an unlawful employment practice.

### B. Racial Discrimination

In his brief, Mr. Ali does not specifically claim that Mr. Smith's comments were racially discriminatory, but in his letter to Mr. Macon and Mr. Scott, he claims that Mr. Smith's comments were racist epithets. Thus, the court considers whether Mr. Ali objectively believed he was opposing the unlawful employment practice of racial discrimination when he opposed this practice.

The only other case besides *Greene* that Mr. Ali cites in his brief as supporting his claim that he engaged in statutorily protected activity is *Berman v. Orkin Exterminating Co.,* 160 F.3d 697 (11th Cir. 1998). Mr. Ali cites *Berman* for the proposition that a plaintiff is not required to show his employer *actually* engaged in an unlawful employment practice. While the proposition is true in isolation, *Berman* is inapposite in this instance because its facts are so different from the case at hand. In *Berman,* the plaintiff's supervisor told the plaintiff that the reduction in his commission was because he was Jewish, and the plaintiff heard several of his supervisors refer to him as "the Jew." *Id.* at 699. The plaintiff filed EEOC charges alleging religious discrimination, and although he was ultimately unsuccessful, he had a "reasonable belief that an unlawful employment practice was occurring." *Id.* at 705.

Mr. Smith's comment that Mr. Ali needed to "be a man" does not rise to the level of blatant discrimination evident in *Berman*; no clearly discernable negative implication exists in Mr. Smith's statement. The court does not require that Mr. Ali prove that the College actually engaged in an unlawful employment practice but just that it was reasonable in light of all the facts and circumstances to believe that the College was engaging in an unlawful employment practice.

Mr. Ali's claim that "be a man" "injects into [his] mind" that Mr. Smith was referring to him as "'BOY' in every sense of racist epithets possible without saying BOY" is not enough to prove racial discrimination and is simply not reasonable. (*See* Doc. 33-1. At 2).  The leap from Mr. Smith saying "be a man" to Mr. Ali interpreting Mr. Smith as calling him "boy" is a very large one, and one that a reasonable person would not take. "Be a man" is not a racial epithet, and Mr. Ali's interpretation of it as a racial epithet is not reasonable in the eyes of the court. Mr. Ali's belief that Mr. Smith's comment telling him to "be a man" was racially discriminatory and an unlawful employment practice is not objectively reasonable. Thus, Mr. Ali cannot have held a reasonably objective belief that Mr. Smith's comment was racially discriminatory and thus an unlawful employment practice.

      C.    Sex Discrimination

Mr. Ali claims that he was unclear about how exactly he was being discriminated against, whether it was because of his religion, sexuality, or race.  In his brief, Mr. Ali claims that he was retaliated against for comments Mr. Smith made about his "sex and religion."  The court cannot find a reasonable interpretation of either of Mr. Smith's comments that would lead to an objective belief that an unlawful employment practice of sex discrimination was occurring at the

College.

Simply because Mr. Ali was offended by Mr. Smith's comments and felt they were inappropriate for the workplace does not create an objectively reasonable belief of an unlawful employment practice sufficient to establish a prima facie case of statutorily protected conduct. Because Mr. Ali cannot produce evidence sufficient to show he engaged in statutorily protected conduct, his claim of retaliation fails, and the court need not examine the remaining elements to establish a prima facie case of retaliation.

Even if Mr. Ali were able to establish that he engaged in statutorily protected conduct, the College has shown legitimate business reasons for his termination. Mr. Ali continually failed to meet the prescribed objective goals set for admission associates after being warned of his poor job performance metrics and having several meetings with his supervisors. Mr. Ali's record and pattern of poor job performance show that the College had a legitimate reason to terminate Mr. Ali.  Further, Mr. Ali produces no evidence that the College's given reasons for his termination are a pretext for retaliation.

Because Mr. Ali cannot produce sufficient evidence to show he engaged in statutorily protected conduct, and even if he could, cannot produce any evidence of pretext in the College's legitimate business reasons for terminating him, the court will GRANT the College's motion for summary judgment on Count III of Mr. Ali's Amended Complaint.

IV.     CONCLUSION

The parties do not dispute any material facts in the case, and Mr. Ali cannot establish a prima facie case of either discrimination or retaliation against the College. Because of these reasons, the court will GRANT the College's motion for summary judgment, will DISMISS Mr.

Ali's claims WITH PREJUDICE and will simultaneously enter an order to that effect.

DONE and ORDERED this 31st day of October, 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE